UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SANDRA HAMILTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:12-CV-372 CAN |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On July 9, 2012, Plaintiff Sandra Hamilton ("Hamilton") filed her complaint in this Court. On October 25, 2012, Hamilton filed her opening brief requesting that this Court reverse and remand this matter to the Commissioner of Social Security ("Commissioner") for calculation of benefits. In the alternative, Hamilton seeks reversal of the Commissioner's decision and a remand for a new decision consistent with the principles outlined in her brief. On November 29, 2012, the Defendant, Social Security Administration, filed a response. Plaintiff filed a reply brief on December 18, 2012. This Court may now enter a ruling in this matter based on the parties' consent. *See* 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**I.   PROCEDURE**

On April 20, 2009, Hamilton filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 416(i), 1381. Hamilton alleged a disability due to a right knee injury, with an onset date of March 9, 2009. (Tr. 144-52, 161). Her claims were denied initially on July 6, 2009, and also upon reconsideration on December 8, 2009. Hamilton appeared at a hearing before an administrative

law judge ("ALJ") on March 21, 2011. William Newman, a vocational expert, also testified at the hearing. (Tr. 20-48).

On March 24, 2011, the ALJ issued a decision holding that Hamilton was not disabled. (Tr. 53). The ALJ found that Hamilton met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. 58). The ALJ also found that Hamilton has not engaged in substantial gainful activity since March 9, 2009, and that her status post right total knee arthroplasty for severe degenerative joint disease, coupled with morbid obesity, constituted severe impairments. (*Id.*). The ALJ found, however, that Hamilton did not have an impairment or combination of impairments that met or medically equaled a condition listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 59). The ALJ further found that Hamilton retained the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); however, she could only occasionally stoop, crawl, crouch, balance and climb stairs and ramps. Furthermore, Hamilton can never kneel, or climb ladders, ropes, and scaffolds, and must avoid concentrated exposure to heights, hazards, wetness and vibration. (*Id.*). The ALJ concluded that Hamilton had no past relevant work and that she could perform jobs that existed in the national economy. (Tr. 62). Thus, the ALJ found that Hamilton was not disabled. (Tr. 53).

On May 22, 2012, the Appeals Council denied review of the ALJ's decision. (Tr. 1). Therefore, the ALJ's determination became the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. Hamilton then timely filed a complaint in this Court seeking a review of the ALJ's decision.

## II. ANALYSIS

### A. Facts

#### 1. Medical Evidence

Hamilton was born in 1967, and was forty-two years old at the time she filed her application for disability benefits and SSI. She completed high school and previously performed various factory jobs, including work as a fork-lift driver and machine operator. (Tr. 25). On March 9, 2009, Hamilton injured her right knee while at work. (Tr. 227). A subsequent x-ray exam revealed bone spurs in her knee, and an MRI showed mild degenerative changes in the knee, a small tear in the meniscus, and an unstable patella. (Tr. 229, 233-36, 242-44, 255-56, 293). Thereafter, Plaintiff began treatment with orthopedic surgeon Salil Rajmaira, M.D., who noted tenderness, a moderately reduced range of motion, and mild swelling in Plaintiff's knee. (Tr. 251-54). In April 2009, Dr. Rajmaira asked Plaintiff to lose weight and strengthen her quadriceps muscles. Furthermore, Dr. Rajmaira allowed Plaintiff to return to work as tolerated on April 3, 2009. (Tr. 260). Dr. Rajmaira conducted additional examinations in April, May, and June 2009, without noting any further changes in Hamilton's knee. (Tr. 272, 291-92, 303).

In June 2009, Plaintiff underwent a consultative examination with state medical examiner Bilal Khan, M.D. (Tr. 278-81). Dr. Khan noted tenderness and a reduced range of motion in Plaintiff's knee, but her posture and gait were normal, and she was able to squat and stand on her heels and toes. (Tr. 278-81). Following the examination, a reviewing state agency physician opined that Plaintiff could perform a range of sedentary work. (Tr. 284-90).

In May 2010, Plaintiff established care with orthopedic surgeon Theodore Chaykowski, M.D. (Tr. 320-21). On October 26, 2010, Dr. Chaykowski operated on Plaintiff's right knee. (Tr. 317-19). Following the operation, Plaintiff began physical therapy. (Tr. 310-14). Her knee was later described as "very stable," and Plaintiff informed Dr. Chaykowski that she could "climb stairs without difficulty." (Tr. 310). By February 2011, Plaintiff was not taking pain medication, and in March 2011, she displayed a full range of motion and normal strength in her knee. In March 2011, Dr. Chaykowski described her knee as "not painful or tender." (Tr. 372).

Following the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council indicating that Dr. Chaykowski's associate, orthopedic surgeon Timothy Van DeLeur, M.D., performed a second operation on Hamilton's right knee on October 27, 2011. (Tr. 361-76). Dr. Van DeLeur also instructed Hamilton to complete post-operative physical therapy two to three times per week for four to six weeks. (Tr. 362). The Appeals Council considered the additional evidence and denied Hamilton's request for review of the ALJ's decision. (Tr. 1).

    **2.**    **Claimant Testimony**

At her hearing before the ALJ, Hamilton testified that she is disabled due to a right knee injury. She stated that prolonged sitting caused her knee to swell and that she needed to move around periodically to manage the swelling. (Tr. 27). Plaintiff estimated that she was able to sit for up to one hour at a time and that she could stand for up to twenty minutes; however, prolonged standing or walking caused her knee to swell. (Tr. 32-35). Hamilton testified that she could walk one and a half to two blocks at one time without a cane. (Tr. 34). She also stated that she drives herself to physical therapy two to three times per week, and that prior to her operation, she drove to Kentucky with her mother. (Tr. 24, 37). Hamilton also noted that she

4

was able to complete various household chores, such as vacuuming and laundry. (Tr. 35-36). She further testified that the pain had gradually improved since her operation, and reported using only over-the-counter Ibuprofen for pain relief. (Tr. 33, 41).

### 3. Vocational Expert Testimony

William Newman, a vocational expert, testified at Hamilton's March 2011 hearing. Considering the Plaintiff's age, work experience, education, and functional limitations, Newman identified around 36,300 jobs that she could perform in Indiana. (Tr. 44-45). Newman stated that the number of jobs identified would not decrease if the Plaintiff required an opportunity to shift between sitting and standing every hour. (Tr. 44). Upon further questioning, Newman stated that the number of jobs available would not diminish if the Plaintiff had to get up and move for a few minutes every hour. (Tr. 46). When pressed about a hypothetical situation where the Plaintiff had to move every twenty minutes for two to three minutes every hour, Newman stated, "[E]very 20 minutes—it probably would, I'm trying to look at the—it probably be [sic] inconsistent because that, [sic] it would be difficult for her to keep up the production." (Tr. 47).

### B. Standard of Review

In reviewing disability decisions of the Commissioner of Social Security, the district court shall affirm the ALJ's decision so long as it is both supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence is more than a mere scintilla of such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

5

This court will not substitute its own opinion for that of the ALJ, nor re-weigh the evidence; however, it will conduct a critical review of the evidence, considering both the evidence that supports and detracts from the decision. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id.* The ALJ must explain his analysis of the evidence with specific detail and clarity so as to build a logical bridge from the evidence to the conclusion, but does not need to provide a "complete written evaluation of every piece of testimony and evidence." *Haynes*, 416 F.3d at 626 (*quoting Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). This includes addressing uncontradicted evidence that supports a claimant's disability. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). The ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

A claimant will only qualify for benefits if they are found disabled under the Social Security Act ("Act"). 42 U.S.C. § 423(a)(1)(E). The Act defines disability as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). Social Security regulations set forth a sequential five-part test to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. This test requires the ALJ to consider whether: (1) the claimant is involved in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that is severe; (3) the individual's impairment meets the severity or an impairment listed in the Social Security regulations as being so severe as to preclude substantial gainful activity; (4) the impairment prevents the claimant from performing past

relevant work; (5) the national economy lacks a significant number of jobs that the claimant has the capacity to perform. *Id.* The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either step three or step five. *Briscoe v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). At step three, if the impairment meets any of the severe impairments listed in the Social Security regulations, the impairment is acknowledged by the Commissioner, and the claimant is found to be disabled. 20 C.F.R. § 416.920. If, however, the claimant's impairment does not meet a listing, the ALJ will then assess the claimant's RFC to determine if the claimant can perform past relevant work, or other work available in significant numbers in the national economy. *Id.*

### C. Plaintiff is not entitled to a remand for consideration of newly submitted evidence

Hamilton argues that she is entitled to a remand for consideration of newly submitted evidence. Under limited circumstances, a court may review evidence that was not available to the ALJ in order to determine whether the claimant is entitled to a remand pursuant to sentence six of 42 U.S.C. § 405(g). *Eads v. Secretary of Health and Human Services*, 983 F.3d 815, 817-18 (7th Cir. 1993). A case may only be remanded if the evidence is "new" and "material," and the plaintiff shows "good cause" for failing to introduce it during the administrative proceeding. *Id.* at 818. Under this section, evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (*quoting Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). Evidence is "material" if a "reasonable possibility" exists that the ALJ would have reached a different

7

conclusion had the information been considered.  *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988) (*quoting Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir. 1987)).  New evidence is only material, however, if it pertains to the claimant's condition "during the relevant time period encompassed by the disability application under review."  *Schmidt*, 395 F.3d at 742 (*quoting Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).  The evidence must "relate to the period on or before the date of the administrative law judge hearing decision."  *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).  Medical records "postdating the hearing" that only refer to the claimant's current condition, not her condition at the time the Social Security Administration considered her application, do not qualify as new and material evidence.  *Schmidt*, 395 F.3d at 742.

In the instant case, the Plaintiff is not entitled to a remand because the supplemental medical evidence is not "material" within the meaning of 42 U.S.C. § 405(g).  The medical evidence upon which Hamilton seeks a remand includes treatment notes and an additional operation on her right knee in October 2011.  (Tr. 362-70).  The ALJ issued her opinion, however, in March 2011.  The records at issue thus pertain to the Plaintiff's condition post-hearing, and could not have affected the ALJ's decision rendered several months earlier.  Therefore, they do not qualify as "material" evidence under 42 U.S.C. § 405(g), and are not a basis for a remand.  *See Schmidt*, 395 F.3d at 742.

**D.     The ALJ's RFC determination is supported by substantial evidence**

The second issue that this Court must resolve is whether the ALJ made a proper RFC determination.  Hamilton argues that the ALJ's opinion does not support her RFC determination because (1) the ALJ failed to adequately discuss the limiting effects of obesity on Plaintiff's

8

ability to engage in work-related activities, and (2) the ALJ improperly evaluated the credibility of Plaintiff's testimony regarding her pain symptoms.

An individual's RFC is a judgment of their ability to perform physical and mental work activities on a sustained basis, despite having limiting impairments. 20 C.F.R. § 416.945; SSR 96-8p (1996). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 416.949. The record includes medical signs, diagnostic findings, the claimant's statements about the severity and limitations of medical impairments, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence in the record. *See Martinez v. Astrue*, No. 2:09-cv-62-PRC, 2009 U.S. Dist. WL 4611415, at *9 (N.D. Ind. Nov. 30, 2009); SSR 96-7p.

### 1. The ALJ adequately discussed the functional limitations caused by obesity

Hamilton seeks a remand for further consideration of the effects of obesity on her ability to walk, stand, and sit pursuant to SSR 02-01p. In promulgating SSR 02-01p, the Social Security Administration set forth guidelines for ALJs clarifying how they evaluate the effects of obesity throughout the five step disability determination process. Specifically, the ALJ will consider obesity in determining: (1) whether the claimant has a medically determinable impairment; (2) whether the impairment is severe; (3) whether the impairment meets or medically equals a listed impairment; and (4) whether any unique exertional limitations exist because of obesity. *See* SSR 02-01p. Additionally, the regulations acknowledge that obesity can exacerbate other medical conditions, such as arthritis present in a weight-bearing joint. *Id.*

9

The Plaintiff contends that the ALJ failed to follow SSR 02-01p, but does not explain the reason for this conclusion, other than stating that the ALJ did a "cursory explanation of [Hamilton's] statements about the intensity, persistence, and limiting effects of the obesity and the arthritic condition." In the opinion, however, the ALJ stated that she was following SSR 02-01p, and discussed obesity as it pertains to the existence of a severe impairment, as well as its impact on Hamilton's RFC. Furthermore, the ALJ supported her conclusions with substantial references to Plaintiff's daily activities and the medical notes from two separate treating physicians, who noted that the Plaintiff could squat and stand up from a squatted position, and could climb stairs "without difficulty." Therefore, the ALJ's interpretation of the limiting effects of obesity were supported by substantial evidence and will not be overturned.

### 2. The ALJ's credibility determination was not patently wrong

In addition to disputing the ALJ's assessment of the limiting effects of obesity, Hamilton also challenges the ALJ's credibility determination. Social Security regulations require the ALJ to make an individualized determination regarding the claimant's testimony about the symptoms caused by a medical impairment. SSR 96-7p. The ALJ is in a special position to hear, see, and assess witnesses, so his credibility determinations are given special deference and will only be overturned if they are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In assessing a claimant's subjective symptoms, particularly pain, the ALJ must follow a two-step process. SSR 96-7p. First, the ALJ must determine whether a medically determinable impairment exists that can by shown by acceptable medical evidence and can be reasonably

expected to produce the claimant's pain or other symptoms. *Id.* Second, after showing the existence of an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id.* Whenever a claimant's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. *Id.* Furthermore, "careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. It is the claimant's responsibility, however, to provide medical evidence showing how the impairments affect her functioning. 20 C.F.R. § 416.912.

In determining the credibility of Hamilton's testimony regarding the symptoms associated with her pain, the ALJ concluded that her medically determined impairments could reasonably be expected to cause "some" of the symptoms she alleged in her testimony. (Tr. 59). The ALJ found, however, that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above [RFC]." (*Id.*). Hamilton contends that the ALJ improperly evaluated the consistency of Hamilton's testimony against the RFC instead of the evidence in the record. As the claimant correctly states, in *Bjornson v. Astrue*, the Seventh Circuit rejected an ALJ's use of the exact same boilerplate language used in this case. 671 F.3d 640, 644 (7th Cir. 2012). The court in

11

*Bjornson*, however, criticized the ALJ not for the form of the boilerplate language, but for the ALJ's failure to link his conclusion to the evidence in the record. 671 F.3d at 644.

In this case, the ALJ demonstrated that Hamilton's testimony regarding the frequency and limiting effects of her knee pain was inconsistent with the medical evidence. The ALJ found that the evidence did not support the extreme degree of pain alleged by Hamilton, and supported this conclusion by noting Hamilton's sporadic medical treatment history, use of only over-the-counter Ibuprofen to control pain, and her daily physical activities. (Tr. 29). Specifically, Hamilton is able to take care of her own personal hygiene, complete most household chores, and drive herself to physical therapy and church services. (Tr. 60). Additionally, the ALJ noted that none of the medical records indicate any limitations beyond sedentary, and no treating medical source provides functional limitations for Hamilton. (*Id.*). Considering these facts, the ALJ determined that Hamilton retained the RFC for sedentary work, with the further restrictions that she can only occasionally stoop, crawl, crouch, balance and climb stairs and ramps. Moreover, Hamilton can never kneel, or climb ladders, ropes, and scaffolds, and she must avoid concentrated exposure to heights, moving machinery, wetness, and vibration. (Tr. 61).

In sum, the ALJ articulated the specific reasons he discounted Plaintiff's testimony, including her activities of daily living and her medical history. Therefore, the ALJ's credibility determination did not lack explanation or support, and so is not patently wrong, and will be upheld. *See Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Kapusta v. Sullivan*, 900 F.2d 94, 96 (7th Cir. 1989). The ALJ's reasons are properly supported by record evidence and are sufficiently specific to make clear the weight

12

given to Hamilton's testimony and the specific reasons for that weight. *See* SSR 96-7p. For this reason, this Court finds that the ALJ's credibility determination must stand.

### E. Substantial evidence supports the ALJ's conclusion that jobs exist in significant numbers that Plaintiff can perform

Hamilton finally argues that the ALJ erred in finding that jobs exist in significant numbers in the national economy that a worker with her history and limitations can perform. At the final step of the sequential evaluation, the ALJ must decide whether jobs exist in significant numbers in the national economy that someone with the claimant's age, work experience, and RFC can perform. 20 C.F.R. §§ 404.1569, 416.969. Often, an ALJ will consult a vocational expert to better understand the extent to which a claimant's disabilities preclude their return to gainful employment. *See* SSR 83-12. If a claimant's disabilities erode the occupational base to the point where jobs no longer exist in significant numbers in the national economy that the claimant can perform given their RFC, age, education, and work experience, the claimant is found to be disabled. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

In the instant case, the ALJ found that the Plaintiff can perform a reduced range of sedentary work. (Tr. 59). At the hearing, a Vocational Expert testified that someone with Hamilton's limitations could still perform approximately 36,000 jobs in Indiana. (Tr. 43-44). The Plaintiff, however, challenges the ALJ's finding, and argues that the Vocational Expert's testimony indicates that an individual who must get up and walk around every twenty minutes for two to three minutes is functionally incapable of full-time employment. (*See* Tr. 46-47).

This Court finds that substantial evidence supports the ALJ's conclusion that jobs exist in significant numbers that an individual with the Plaintiff's limitations can perform. Even if an individual who must get up and move every twenty minutes for two to three minutes is incapable of gainful employment, no medical evidence in the record indicates that the Plaintiff is limited to these requirements. Furthermore, examining physicians noted that Hamilton's posture and gait were normal, and that she was able to stand on her heels and toes, and squat and stand up from a squatted position. (Tr. 61). The ALJ supported her conclusion by noting the Claimant's use of only over-the-counter medication for pain relief, as well as her sporadic medical treatment and activities of daily living. Finally, Hamilton testified at the hearing that she could sit for one hour at a time and stand in place for twenty minutes. (Tr. 35-36). Therefore, this Court finds that the ALJ's determination that a significant number of jobs exist in the national economy that the Plaintiff can perform given her functional limitations is supported by substantial evidence.

## III. Conclusion

This Court concludes that Hamilton is not entitled to a remand for consideration of newly submitted evidence and the ALJ made a proper RFC determination. The Plaintiff's medical evidence is not "material" within the meaning of 42 U.S.C. § 405(g), and the ALJ properly analyzed obesity and its impact, and her credibility determination was not patently wrong. Furthermore, substantial evidence supports her conclusion that jobs exist in significant numbers in the economy that the Plaintiff can perform. Therefore, Hamilton's motion to reverse or remand is **DENIED**. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). In addition, because the Plaintiff is not the prevailing party in this

action, her request for payment of attorney fees pursuant to 28 U.S.C. § 2412 is **DENIED**. The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED**

Dated this 2nd day of April, 2013.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge